IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 01-00253-01/02-CR-W-ODS |
| ) | |
| ROBERT R. COURTNEY, et al. ) | |
| ) | |
| Defendants. ) | |

## ORDER AND OPINION DENYING DEFENDANT'S
## RENEWED MOTION FOR REDUCTION IN SENTENCE

Pending is Defendant Robert Courtney's Renewed Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A). Docs. #174, 178. For the following reasons, Defendant's motion is denied.

### I. BACKGROUND

In August 2001, Defendant Robert Courtney, a pharmacist at the time, was charged with diluting prescription chemotherapy drugs, which he sold to consumers of his pharmacy. Doc. #10. In April 2002, Defendant pleaded guilty to all twenty charges, which included eight counts of tampering with consumer products (18 U.S.C. §§ 1365(a), 1365(a)(3)), six counts of adulteration of drugs (21 U.S.C. §§ 331(k), 333(a)(2)), and six counts of misbranding drugs (21 U.S.C. §§ 331(k), 333(a)(2)). Docs. #102-03, 106. Defendant admitted to diluting prescription chemotherapy drugs and providing diluted prescription chemotherapy drugs to thirty-four persons on 158 separate occasions. Docs. #102, 106. Defendant also admitted to purchasing and selling stolen chemotherapy drugs and causing false claims to be submitted to Medicare. *Id.* Defendant admitted he knew his conduct would cause serious bodily harm and a substantial risk of death to the patients who received the chemotherapy drugs that he diluted. *Id.*

On December 5, 2002, Defendant was sentenced to 360 months' imprisonment. Docs. #132-35. Among other things, the Court found Defendant, who targeted

vulnerable victims, "significantly endangered public health," and his "conduct posed a unique and substantial risk of psychological injury." Doc. #131, at 2; Doc. #137-1, at 117-21. The Court acknowledged "the magnitude of the additional criminal conduct," which included an additional twenty-six individuals who received diluted chemotherapy drugs from Defendant, for which Defendant was not charged. Doc. #137-1, at 120. The Court found Defendant's crimes were "a shock to the civilized conscience"; "a shock to the conscience of a nation, the conscience of a community, and the conscience of this Court"; and were "beyond understanding." *Id.* at 122. Defendant's conduct "changed the way a nation thinks . . . about pharmacists . . . about prescription medication . . . [and] about those institutions that we trusted blindly." *Id.*

Defendant's sentence was upheld by the United States Court of Appeals for the Eighth Circuit. *United States v. Courtney*, 362 F.3d 497, 498-99 (8th Cir. 2004), *cert. granted, judgment vacated,* 543 U.S. 1098 (2005), and *opinion reinstated,* 412 F.3d 855 (8th Cir. 2005).

In December 2019, Defendant filed a pro se motion asking the Court to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Doc. #162. After obtaining an extension of time, Plaintiff United States of America opposed the motion, arguing Defendant did not exhaust his administrative remedies with the Bureau of Prisons ("BOP") and failed to show extraordinary and compelling reasons warranted a reduction in sentence. Doc. #166. In April 2020, the Court denied Defendant's motion without prejudice, finding he failed to establish he exhausted his administrative remedies. Doc. #169. The Court also denied Defendant's Motion to Reconsider. Docs. #170, 172.

On May 26, 2020, the Court received a filing from Defendant seeking an extension of time to respond to the Government's opposition to Defendant's Motion to Reconsider. Doc. #174. Because Defendant's Motion to Reconsider had already been denied, the Court found this request was rendered moot. Doc. #175. However, in the same filing, Defendant informed the Court that a more recent request for a reduction in sentence was denied by the warden of Defendant's correctional facility on April 29, 2020. Doc. #174, at 5-6. Defendant also mentioned he had obtained representation and requested six weeks for counsel to enter an appearance. *Id.* at 6-7.

The Court construed Defendant's filing as a renewed motion for a reduction in sentence and granted Defendant leave to file supplemental suggestions.  Doc. #175.  On July 9, 2020, Defendant, now represented by counsel, filed supplemental suggestions in support of his renewed motion for a reduction in sentence.  Doc. #178.  On July 24, 2020, the Government filed its opposition to Defendant's motion.  Doc. #179.  On July 29, 2020, Defendant filed his reply.  Doc. #180.

## II.  DISCUSSION
### A.  Exhaustion of Administrative Rights

Before a district court can consider a sentence reduction request under 18 U.S.C. § 3582(c), the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A).  To exhaust all administrative rights, a defendant must submit a "request" to the warden for a reduction in sentence based on extraordinary and compelling reasons.  28 C.F.R. § 571.61(a).

"An inmate may initiate a request for consideration . . . only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing."  *Id.*  "Ordinarily, the request shall be in writing," include the "extraordinary or compelling circumstances" the defendant "believes warrant consideration," and contain proposed release plans.  § 571.61(a)(1)-(2).  Pursuant to BOP's procedures, a request for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1) is "considered 'submitted' . . . when received by the Warden . . . ."  Fed. Bureau of Prisons, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*, Program Statement No. 5050.50 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

On March 27, 2020, Defendant submitted a request for compassionate release to the warden of FCI Englewood, where Defendant is incarcerated.  Doc. #178-1.  On June 4, 2020, Defendant's request was denied.  Doc. #178-2.  The Government "concedes that further exhaustion of administrative remedies can be excused and the Court can proceed to determine the merits of Defendant's motion."  Doc. #179, at 3.

3

Regardless, more than thirty days have elapsed since Defendant submitted his request. Accordingly, Defendant has fully exhausted his administrative rights. 18 U.S.C. § 3582(c)(1)(A).

## B. Defendant's Request for Compassionate Release

Among other things, the First Step Act of 2018 allows defendants, for the first time, to petition district courts directly for early release from prison in certain circumstances. 18 U.S.C. § 3582(c).[1] To grant Defendant's request for early release, the Court must (1) find "extraordinary and compelling reasons warrant such a reduction," (2) conclude "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," (3) "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable," and (4) find "the defendant is not a danger to the safety of another person or the community." 28 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1.B1.13.

### (1) Extraordinary and Compelling Reasons and the Sentencing Commission's Policy Statement

As the United States Court of Appeals for the Eighth Circuit recently noted, "the Sentencing Commission has not updated its policy statement regarding compassionate release since the First Step Act." *United States v. Rodd*, 966 F.3d 740, 746 (8th Cir. 2020). In its current form, the Sentencing Commission's applicable policy statement "identifies four categories that constitute '[e]xtraordinary and compelling reasons warrant[ing] the [sentence] reduction.'" *Id.* (quoting U.S.S.G. § 1B1.13 app. n.1). "[E]xtraordinary and compelling reasons" include "the defendant's medical condition, the defendant's age, the defendant's family circumstances, and other 'extraordinary and compelling reason[s]' '[a]s determined by the Director of the Bureau of Prisons.'" *Id.* at 746-47 (quoting U.S.S.G. § 1B1.13 app. n.1).

---

[1] Prior to the First Step Act, only the Director of the Bureau of Prisons could move for compassionate release. *United States v. Rodd*, 966 F.3d 740, 745 (8th Cir. 2020) (citation omitted).

When a defendant "is suffering from a terminal illness," the defendant's medical condition is considered an extraordinary and compelling reason. U.S.S.G. § 1B1.13 app. n.1(A)(i). Additional extraordinary and compelling reasons associated with the defendant's medical condition include when "[t]he defendant is…suffering from a serious physical or medical condition,….suffering from a serious functional or cognitive impairment,…or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13 app. n.1(A)(ii).

A defendant's age may also qualify as an extraordinary and compelling reason for reducing a sentence. § 1B1.13 app. n.1(B). To be considered for a reduction in sentence based on age, "[t]he defendant (i) [must be] at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

Defendant argues "extraordinary and compelling circumstances presented in the instant case are two-fold": (1) "he qualifies for compassionate release based on his age and health concerns," and (2) his "age and health conditions create a significant risk of serious illness or death due to the COVID-19 pandemic." Doc. #178, at 11.[2] Defendant is sixty-seven years old and claims he "suffers from chronic and serious medical conditions that affect his daily life." *Id.* While in prison, Defendant "has suffered from hypertension, a stroke, three heart attacks, and two years of internal bleeding which required blood transfusions." *Id.* In support of his argument that his sentence should be reduced, Defendant points to risks associated with his medical conditions, the spread of COVID-19 in prisons, and other courts' decisions granting requests for compassionate release in light of COVID-19.

---

[2] Defendant does not argue his family circumstance is a basis for his pending motion, so the Court does not discuss or consider that basis.

## (a) Risk for Severe Illness from COVID-19

Defendant relies on the Centers for Disease Control and Prevention ("CDC") to support his argument that his age and medical conditions create a significant risk of serious illness or death due to COVID-19. Doc. #178, at 11-12. "Among adults, the risk for severe illness from COVID-19 increases with age . . . ." CDC, Coronavirus Disease 2019: Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Aug. 28, 2020). In addition, "[p]eople of any age with the following conditions **are at increased risk** of severe illness from COVID-19": cancer; chronic kidney disease; chronic obstructive pulmonary disease; immunocompromised state from solid organ transplant; obesity; "[s]erious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies"; sickle cell disease; or Type 2 diabetes. CDC, Coronavirus Disease 2019: People with Certain Medical Conditions, www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 28, 2020) (emphasis in original). The CDC states people suffering from, among other things, "hypertension or high blood pressure" "**might be at an increased risk** for severe illness from COVID-19." *Id.* (emphasis in original).

Defendant provides some medical records to his renewed motion. *See* Doc. #178-3. The most recent medical record is from March 2018. *Id.* at 2. At that time, Defendant's hypertension medication was changed, and he was directed to "[f]ollow-up at Chronic Care Clinic as Needed." *Id.* The other medical records are from April 2017 and September 2016. *Id.* at 3-9. While Defendant states he has suffered from heart attacks, the provided medical records, as best the Court can discern, do not demonstrate Defendant suffers from a serious heart condition. *Id.* at 2-9. Furthermore, the medical records do not establish Defendant suffers from a condition that, according to the CDC, would place him at an increased risk of severe illness from COVID-19. At most, Defendant's hypertension "might be an increased risk for severe illness from COVID-19," according to the CDC.

### (b) COVID-19 and the Federal Prisons

Defendant also points to the spread of COVID-19 throughout the federal prisons. Doc. #178, at 12. The BOP has more than 127,000 inmates in facilities that the BOP manages and nearly 14,000 in community-based facilities. BOP, COVID-19 Coronavirus, www.bop.gov/coronavirus/ (last visited Aug. 28, 2020). The BOP reports 1,482 inmates and 648 BOP staff members have confirmed positive test results for COVID-19. *Id.* BOP also represents 117 inmates and one BOP staff member has died from COVID-19. *Id.*

At FCI Englewood, where Defendant is located, one inmate has a confirmed positive test result for COVID-19, six inmates recovered from COVID-19, and one staff member recovered from COVID-19. *Id.* FCI Englewood has a population of 968 inmates. BOP, FCI Englewood, https://www.bop.gov/locations/institutions/eng/ (last visited Aug. 28, 2020). Based on the figures provided by BOP, the rate of COVID-19 infection at FCI Englewood is approximately 0.7%.[3] FCI Englewood's incident rate is lower than the incident rate in the State of Colorado where the facility is located.[4]

The Government emphasizes the BOP has measures in place to contain the spread of COVID-19 and treat affected inmates. Doc. #179, at 2, 6-9. The BOP's action plan provides for preventative and mitigating measures, including the screening of inmates and staff members, quarantine logistics, suspension of social visits and tours, suspension of legal visits, suspension of inmate movements, modified operations, and limited group gatherings. *Id.* at 6-9. Given the low incident rate at FCI Englewood, the BOP's measures appear to be working at that facility.

---

[3] The Court did not include the staff member who recovered from COVID-19 in its calculation because the number of staff members at FCI Englewood is unknown.
[4] The State of Colorado has reported more than 56,000 COVID-19 cases. Colo. Dep't of Pub. Health & Env't, https://covid19.colorado.gov (last visited Aug. 28, 2020). With a population of 5,700,000, Colorado's COVID-19 incident rate is 0.98%. U.S. Census Bureau, Quick Facts: Colo., https://www.census.gov/quickfacts/CO (last visited Aug. 25, 2020).

### (c) Other District Court Decisions

In further support of his motion, Defendant cites to six district courts that granted motions for compassionate release due to COVID-19. Doc. #178, at 13-15. But the cited cases are unlike Defendant's circumstances.

First, in *United States v. Foster*, the defendant suffered from a "chronic lung illness,"[5] which caused him to "struggle[ ] to breathe on a daily basis." No. 14-CR-324-JEJ (M.D. Pa. Apr. 3, 2020) (Doc. #191, at 1-2, 7). Due to his medical condition and the alleged "overcrowded and unsanitary prison facility," the defendant sought compassionate release. *Id.* at 3. In granting the motion, the district court considered the defendant's medical condition, noting COVID-19 was "perhaps most notorious for causing shortness of breath"; his age (seventy); the nonviolent nature of his offense[6]; and the defendant's allegation that the facility was "overcrowded and unsanitary." *Id.* at 7-11. In addition, the district court placed significance on the BOP's determination that the defendant merited home confinement beginning approximately forty-five days later and "nearly a year earlier than previously scheduled." *Id.* at 2, 7-10. Additionally, the defendant had served forty-eight months of his sixty-month sentence. *Id.* at 2, 9-10.

Second, in *United States v. Colvin*, the defendant moved for compassionate release due to her medical conditions, which included Type 2 diabetes and high blood pressure, and being confined in a "densely populated prison" where it would be "more difficult to engage in the social distancing that will be critical to her health." No. 3:19CR179 (JBA), 2020 WL 1613943, at *1, 3 (D. Conn. Apr. 2, 2020). The defendant, who was convicted of mail fraud, was sentenced to thirty days, and when she filed her motion, she had eleven days left to serve. *Id.* at *1-2. In granting her motion, the district court found the defendant would be unable to provide self-care and practice social distancing and proper hygiene at the facility where she was incarcerated. *Id.* at 4.

---

[5] The defendant suffers from bronchiectasis, which as the district court explained, "is a disease of the lungs in which mucus builds up in the airways which can cause infection and bleeding. This build up, and the resulting lengthening of the airways, make it harder and harder to breather over time." *United States v. Foster*, No. 4-CR-324-JEJ (M.D. Pa. Apr. 3, 2020) (Doc. #191, at 1-2). "Bronchiectasis is a progressive disease, and there is no cure." *Id.* at 2.

[6] The defendant participated "in a large-scale scheme to defraud his employer, Rite Aid Corporation." *Id.* at 2.

8
Case 4:01-cr-00253-ODS   Document 181   Filed 08/31/20   Page 8 of 15

Third, Defendant accurately represents the district court in *United States v. Brannan* granted the defendant's motion for compassionate release on the same day it was filed. 4:15-CR-80-01 (S.D. Tex. Apr. 2, 2020) (Doc. #286). But Defendant fails to provide the facts considered by the district court in granting the motion. The defendant, who was convicted of bank fraud, was incarcerated at FCI Oakdale in Louisiana. *Id.* (Doc. #285, at 1-2). Unfortunately, COVID-19 significantly impacted FCI Oakdale, becoming a matter of national news. *Id.* at 2-3.[7] In fact, when the district court granted the defendant's motion on April 2, 2020, a fourth inmate had died from COVID-19. *See* Sarah N. Lynch, *Death toll from COVID-19 at Oakdale prison in Louisiana continues to climb*, Reuters (Apr. 2, 2020), https://www.reuters.com/article/us-health-coronavirus-prisons/death-toll-from-covid-19-at-oakdale-prison-in-louisiana-continues-to-climb-idUSKBN21K2D4. The defendant was housed in FCI Oakdale's minimum-security camp, which is "composed of two dormitories with approximately 70 bunk beds in each one, with no cells or other means of isolating or social distancing." No. 4:15-CR-80-01 (S.D. Tex. Apr. 2, 2020) (Doc. #285, at 3-4). Although the defendant's motion was granted, the district court ordered the defendant be monitored by "location monitoring technology" for twelve months. *Id.*

Fourth, in *United States v. Resnick*, the defendant sought compassionate release due to his chronic medical conditions, including "diabetes and related end-stage liver disease," making him "particularly vulnerable to COVID-19." No. 12-CR-152-01, 2020 WL 1651508, at *1 (S.D.N.Y. Apr. 2, 2020). When he filed his motion, the defendant had served more than sixty percent of his six-year sentence for mail and wire fraud and conspiracy to commit mail and wire fraud. *Id.* at 1-2. The district court granted the motion because the defendant's medical conditions were "identified as 'high risk,'" the "highly infectious nature of COVID-19," and "the limitations in a prison environment . . .

---

[7] *See also* Sadie Gurman, Zusha Elinson, & Deanna Paul, *Coronavirus Puts a Prison Under Siege*, Wall St. J. (Apr. 6, 2020), https://www.wsj.com/articles/inside-oakdale-prison-our-sentences-have-turned-into-death-sentences-11586191030; Kimberly Kindy, *An explosion of coronavirus cases cripples a federal prison in Louisiana*, Wash. Post (Mar. 29, 2020), https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html.

9

on practicing the hygienic and social distancing techniques" recommended by the CDC to prevent the spread of COVID-19. *Id.* at *7. The district court also found the defendant's home environment would "be significantly better" than where he was incarcerated. *Id.*

Fifth, in *United States v. Williams*, the defendant sought compassionate release based on his "severe coronary and peripheral vascular disease, congestive heart failure, left ventricular dysfunction, end-stage renal disease, hyperlipidemia, and prediabetes." No. 3:04CR95/MCR, 2020 WL 1751545, at *3 (N.D. Fla. Apr. 1, 2020). When granting the motion, the district court determined the defendant's "deterioration in physical health [wa]s sufficiently serious to satisfy the medical criteria for a reduction in sentence." *Id.* at *3. Additionally, the Court observed the defendant had served at least seventy-five percent of his fifteen-year sentence, and he would "be on supervised release for five years, including one year of home confinement . . . ." *Id.* at *3-4.

Finally, in *United States v. Jepsen*, the defendant seeking a reduction in sentence was serving a nine-month sentence for violating his supervised release. No. 3:19-CV-00073(VLB), 2020 WL 1640232, at *1 (D. Conn. Apr. 1, 2020). With less than eight weeks to serve, the defendant moved for compassionate release based on three "chronic conditions considered by the CDC to be risk factors for severe complications," which his medical records confirmed. *Id.* at *3, 5. Significantly, the Government consented to the defendant's release. *Id.* at *5. Based on the "totality of the circumstances" the district court found the defendant established "extraordinary and compelling" reasons to grant compassionate release. *Id.* at *5.

Defendant's circumstances are unlike those presented in *Foster*, *Colvin*, *Brannan*, *Resnick*, *Williams*, and *Jepsen*. Defendant does not suffer from a chronic lung illness that makes it difficult for him to breathe, diabetes, end-stage liver disease, congestive heart failure, or end-stage renal disease. Defendant's crimes are vastly different from those committed by the defendants who were granted compassionate release. Defendant was sentenced to thirty years, unlike the defendants discussed *supra*, who were sentenced to thirty days, nine months, forty-eight months, five years, six years, and fifteen years. FCI Englewood has not had a large outbreak of COVID-19, it is not overcrowded or unsanitary, and does not prevent Defendant from exercising

self-care, proper hygiene, or social distancing. Finally, BOP cancelled its determination that Defendant merited home confinement, and the Government does not consent to Defendant's motion.

### (d)    Defendant's Medical Condition

Defendant is not suffering from a terminal illness. Thus, for his medical condition to be considered an extraordinary and compelling reason for compassionate release, Defendant must demonstrate he is suffering from a "serious physical or medical condition . . . that substantially diminishes [his] ability to . . . provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. n.1(A)(ii). Defendant does not argue – much less, present evidence – his medical condition has substantially diminished his ability to provide self-care while incarcerated. In addition, he does not demonstrate he is not expected to recover from his medical condition. Therefore, Defendant fails to establish his medical condition presents an extraordinary and compelling reason for a reduction in his sentence.

### (e)    Defendant's Age

Defendant is over the age of 65 and has served more than ten years of imprisonment. For his age to qualify as an extraordinary and compelling reason to reduce his sentence, Defendant must also demonstrate he is "experiencing a serious deterioration in physical or mental health because of the aging process." U.S.S.G. § 1B1.13 app. n.1(B). But Defendant does not argue or demonstrate his physical or mental health has deteriorated because of the aging process. Accordingly, Defendant's age is not an extraordinary and compelling reason for his sentence to be reduced.

### (f)    Other Extraordinary and Compelling Reasons

The Sentencing Commission's policy statement indicates extraordinary and compelling reasons, other than medical condition, age, and family circumstances, may justify a sentence reduction. U.S.S.G. § 1B1.13 app. n.1. Although Defendant claims his "life is in jeopardy every day he is imprisoned while the COVID-19 pandemic rips

through the BOP," the facts paint a different picture. The facility where he is serving his sentence has an incredibly low incident COVID-19 rate. In addition, Defendant does not demonstrate he is unable to socially distance or practice appropriate hygiene. While COVID-19 presents unique circumstances, COVID-19's existence and the possibility of contracting the virus, particularly in a facility with a low incident rate, does not warrant compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (citation omitted) (finding the possibility that COVID-19 "may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's . . . extensive and professional efforts to curtail the virus's spread.").

Defendant also suggests his post-conviction conduct should also be considered by the Court. He claims to have rehabilitated himself and states he has been a productive inmate for the roughly nineteen years he has been incarcerated. Doc. #162, at 6-7, 11-14; Doc. #178, at 15-16. But rehabilitating oneself and being a productive inmate do not equate to extraordinary and compelling reasons. Perhaps that is why the Sentencing Commission's policy statement expressly states, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason…." U.S.S.G. 1B1.13(3). Regardless, rehabilitating oneself and being a productive inmate do not equate to extraordinary and compelling reasons for a sentence reduction.

When considering the additional reasons presented by Defendant collectively or in conjunction with his medical conditions and age, the Court finds Defendant has not demonstrated extraordinary and compelling reasons meriting a reduction in sentence. For this reason, the Court denies Defendant's motion.[8]

### (2)  18 U.S.C. § 3553(a) Factors

Even if the Court were to find Defendant demonstrated extraordinary and compelling reasons for a reduction in sentence, the Court would still deny Defendant's motion because a reduction in his sentence would be unwarranted under the factors set

---

[8] The Court also concludes a reduction in Defendant's sentence would be inconsistent with the applicable policy statements issued by the Sentencing Commission. 28 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1.B1.13.

forth in 18 U.S.C. § 3553(a).  28 U.S.C. § 3582(c)(1)(A).  Under section 3553(a), the Court considers the following factors:

- (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
- (2) the need for the sentence imposed—
    - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    - (B) to afford adequate deterrence to criminal conduct;
    - (C) to protect the public from further crimes of the defendant; and
    - (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
- (3) the kinds of sentences available;
- (4) the kinds of sentence and the sentencing range established for—
    - (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
        - (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
        - (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .
- (5) any pertinent policy statement—
    - (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
    - (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
- (6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
- (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3353(a).

13
Case 4:01-cr-00253-ODS   Document 181   Filed 08/31/20   Page 13 of 15

forth in 18 U.S.C. § 3553(a).  28 U.S.C. § 3582(c)(1)(A).  Under section 3553(a), the Court considers the following factors:

- (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
- (2) the need for the sentence imposed—
    - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    - (B) to afford adequate deterrence to criminal conduct;
    - (C) to protect the public from further crimes of the defendant; and
    - (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
- (3) the kinds of sentences available;
- (4) the kinds of sentence and the sentencing range established for—
    - (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
        - (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
        - (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .
- (5) any pertinent policy statement—
    - (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
    - (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
- (6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
- (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3353(a).

The Court considered these factors when it sentenced Defendant. Doc. #179-1, at 2-9. These factors – and the Court's analysis thereof – have not changed since then. For the same reasons stated when the Court sentenced Defendant (Docs. #131, 134-35), the Court finds the factors set forth in section 3353(a) weigh against granting Defendant's motion for compassionate release. For this additional reason, the Court denies Defendant's motion.

### (3) Cancelled Home Confinement

Recently, the BOP considered placing Defendant on home confinement, which would not have reduced his sentence but would have changed the location where he served the remainder of his sentence. Doc. #179, at 2. But the BOP cancelled the home confinement placement because, according to Defendant, "the proposed home release plan was no longer an available option." *Id.* Defendant maintains home confinement was cancelled due to "the numerous threats Courtney's family received when news of his release . . . was inexplicably made public." Doc. #180, at 1.

Defendant claims the BOP's initial decision to release him to home confinement under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, "speaks volumes to the merits" of his motion. *Id.* at 2. Under the CARES Act, "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau [of Prisons] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." CARES Act, Pub. L. No. 116-136, 134 Stat. 281, 515-16 (2020). The CARES Act does not authorize the Court to reduce Defendant's sentence or release him to confinement, and thus, is in applicable and irrelevant to the Court's analysis of Defendant's pending motion.[9]

---

[9] In addition, the Director of the BOP, when determining whether home confinement is appropriate, considers an inmate's age, vulnerability to COVID-19, security level, conduct in prison, risk category, crime of conviction, danger posed by the inmate to the community, and "[w]hether the inmate has demonstrated and [sic] verifiable re-entry plan." *See* Attorney General, *Prioritization of Home Confinement As Appropriate Response to COVID019 Pandemic* (Mar. 26, 2020), https://www.bop.gov/coronavirus/

## III.    CONCLUSION

For all the foregoing reasons, the Court denies Defendant's Renewed Motion for Reduction in Sentence without prejudice.

IT IS SO ORDERED.

DATE: August 31, 2020

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

docs/bop_memo_home_confinement.pdf.  These factors are substantially different than those considered by the Court when deciding whether a defendant qualifies for compassionate release.  18 U.S.C. §§ 3553(a), 3582(c)(1)(A); U.S.S.G. § 1.B1.13.